IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRELL P. HARRIS,
    *Plaintiff*,

v.

LOUIS DEJOY, *et al.*,
    *Defendants.*

Case No. 24-cv-1832-ABA

**MEMORANDUM OPINION AND ORDER**

Plaintiff Darrell P. Harris ("Harris"), proceeding *pro se*, has sued several government agencies and employees related to alleged disability discrimination he contends he suffered while employed as a postal worker. Defendants have filed a partial motion to dismiss. For the reasons below, the Court will grant the motion in part and deny it in part.

**I.    BACKGROUND**

The following facts are drawn from Harris's complaint, which the Court will assume to be true for purposes of the motion to dismiss. *See Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009). Harris suffered an on-the-job injury in December 2021 while working for the United States Postal Service ("USPS"). ECF No. 2 at 3. Because of his injury, he requested accommodations in April 2022, seeking a new position that would entail less physical movement. *Id*. Harris claims that his supervisors at USPS failed to accommodate him, and alleges that his manager DeAdrienne Gilliam "retaliated" against him by "keeping him out of work for almost a year." *Id*.

Harris then began filing administrative complaints related to these allegations. He filed a complaint with USPS's internal Equal Employment Opportunity ("EEO")

1

division, and upon receiving an adverse Final Agency Decision appealed to the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* at 3–4. Harris filed his EEOC appeal on May 1, 2023, but alleges he has still not received a decision. *Id.* at 4

Harris filed the instant complaint in this Court in June 2024. His complaint named the USPS and EEOC as defendants, as well as Louis DeJoy and Charlotte Burrows in their official capacities as leaders of those agencies. *Id.* at 2–3. The complaint further named Gilliam in her official and personal capacities, and Scott Raymond, an executive with the Atlantic Area of the USPS, in his official capacity. *Id.* at 3. Following the government's motion to dismiss, Harris filed a motion seeking to voluntarily dismiss his claims against DeJoy and Burrows because they had left their respective agencies. ECF No. 14.

Harris's complaint asserts three counts: (1) "Failure to Reasonably Accommodate a Disability" in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"); (2) "Intentional Infliction of Emotional Distress"; and (3) "Serious Harm." *Id.* at 4–5. Throughout the three counts, Harris also alleges violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). *Id.* at 4–8.

Defendants filed the instant partial motion to dismiss, seeking dismissal of (1) all claims against the EEOC; (2) the claim for intentional infliction of emotional ("IIED"); (3) any claim related to retaliation; and (4) all claims against individual defendants in either their official or personal capacities. ECF No. 9 at 1. The motion asserts that this Court lacks subject matter jurisdiction, but also challenges certain claims on grounds more properly characterized as failure to state a claim on which relief can be granted.

## II.　DISCUSSION

### A.　Standards of review

"[A] defendant may challenge subject matter jurisdiction in one of two ways." *Kerns*, 585 F.3d at 192. "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* Alternatively, rather than challenge the sufficiency of the complaint as pled, a defendant may contend that its jurisdictional allegations are not true. In this mode of challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.*

Here, Defendants do not specify which type of jurisdictional challenge the motion lodges, but they primarily challenge the legal sufficiency of Harris's complaint rather than contesting the truth of his allegations. *See* ECF No. 9 at 4–7. So the Court will construe the motion to be a facial jurisdictional challenge, and will assume the truth of Harris's factual allegations for purposes of the instant motion.

As noted above, although Defendants' motion invokes subject matter jurisdiction, the Court construes some of the issues under Rule 12(b)(6), as arguments that the complaint fails to state a claim on which relief can be granted. A court may re-characterize a motion to dismiss to better comport with the legal substance of the challenge. *See, e.g.*, *Nw. Mut. Life Ins. Co. v. Escoto*, Case No. 19-cv-1237-PX, 2020 WL 3791965, *2 n.2 (D. Md. July 7, 2020) (converting a Rule 12(b)(6) motion into a Rule

3

12(b)(1) motion). The standard of review under Rule 12(b)(6) is the same as for a facial jurisdictional challenge: the court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 145 (4th Cir. 2018).

### B.   AMA and FMLA claims

At the outset, it is necessary to clarify which claims Harris is actually pursuing. It is clear that the complaint alleges a claim for IIED via Count 2, which is a tort under state law. ECF No. 2 at 5–6. The statutory claims are less definite. Count 1 is titled "Failure to Reasonably Accommodate a Disability" and alleges that USPS violated Harris's "right to reasonable accommodation under the Rehabilitation Act of 1973." *Id.* at 4. This indicates that Harris means, at least, to bring a failure-to-accommodate claim under the Rehabilitation Act. As Defendants concede, it also appears that Harris intended to bring a retaliation claim under the Rehabilitation Act, as he states that "USPS failed to provide the requested accommodation and allowed [Gilliam] to retaliate against the Plaintiff." ECF No. 1 at 3. The Rehabilitation Act retaliation claim will be addressed below, in the context of Defendants' arguments related to exhaustion, and the Defendants do not appear to generally challenge the sufficiency of the Rehabilitation Act failure-to-accommodate claim in general or this Court's jurisdiction over it.

But in addition to the references to the Rehabilitation Act, the complaint also repeatedly alleges violations of the FMLA and ADA throughout each of the three counts. *See, e.g.*, ECF No. 1 at 5 ("Plaintiff verbally reiterated his request for reasonable accommodation. Still, Ms. Gilliam denied it again, contravening USPS policies and violating Plaintiff's rights under the ADA, the Rehabilitation Act, and the FMLA."). Defendants' brief does not distinguish among the statutory claims, and their arguments

4

are directed entirely to the Rehabilitation Act claim. Because *pro se* pleadings must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court will assume that Harris meant to bring ADA and FMLA claims. But as explained herein, those claims are subject to dismissal.

The ADA and Rehabilitation Act are interconnected. The Rehabilitation Act prohibits discrimination on the basis of disability by federal agencies (including the USPS). 29 U.S.C. § 794(a). To determine what constitutes discrimination, the statute incorporates by reference several sections of the ADA, *id.* § 794(d), including provisions defining discrimination to include failure to "mak[e] reasonable accommodations known" to a qualified employee and prohibiting retaliation. 42 U.S.C. §§ 12112(b)(5)(A), 12203(a); *see also Reyazuddin v. Montgomery Cnty., Maryland*, 789 F.3d 407, 413–14 (4th Cir. 2015) (explaining how the statutes are related). The Rehabilitation Act and ADA both incorporate the private right of action contained in 42 U.S.C. § 2000e-16 (Section 717 of the Civil Rights Act of 1964) as an enforcement provision for allegations of discrimination. 29 U.S.C. § 794a (Rehabilitation Act); 42 U.S.C. § 12133 (ADA).

To the extent the complaint alleges violations of both the Rehabilitation Act and ADA related to a failure to make reasonable accommodations and retaliation, the Court will dismiss the ADA claims. The ADA specifically excludes the Unites States from its definition of employer. 42 U.S.C.A. § 12111(5)(B). This exclusion extends to the USPS. *Brown v. Henderson*, 6 F. App'x 155, 156 (4th Cir. 2001) ("the Postal Service is not subject to suit under the ADA"). "The Rehabilitation Act thus provides the sole grounds for any claim based on Plaintiff's requests for disability accommodation and allegations of disability discrimination." *Desai v. DeJoy*, Case No. 22-cv-846, 2024 WL 3092403, at *4 (E.D. Va. June 20, 2024), *aff'd*, Case No. 24-1796, 2024 WL 5199612 (4th Cir. Dec.

5

23, 2024). Because "[u]nder the principle of sovereign immunity, the United States cannot be sued without Congress's consent," *Evans v. United States*, 105 F.4th 606, 612 (4th Cir. 2024), and Congress has not consented to ADA suits by federal employees, the Court will dismiss Harris's ADA claims for lack of subject matter jurisdiction. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 650 (4th Cir. 2018) (holding that a finding of sovereign immunity deprives a federal court of jurisdiction).

The Court does have subject matter jurisdiction over the FMLA claims, however. Postal workers, unlike most federal employees, are covered under Title I of the FMLA, which includes a private right of action allowing suit against federal agencies. 29 CFR § 825.109(b)(2); 29 U.S.C. § 2617(a)(2); *see also Golez v. Potter*, Case No. 09-cv-0965, 2012 WL 368218, at *4 (S.D. Cal. Feb. 3, 2012) ("Title I of the FMLA authorizes some federal employees, including USPS employees, to file district court actions for violations of the FMLA."). Thus, unlike the ADA claims, Congress has waived sovereign immunity for FMLA claims here.

There are two types of FMLA claims: "(1) 'interference,' in which the employee alleges that an employer denied or interfered with her substantive rights under the FMLA, and (2) 'retaliation,' in which the employee alleges that the employer discriminated against her for exercising her FMLA rights." *Ensor v. Jenkins*, Case No. 20-cv-1266-ELH, 2022 WL 703920, at *19 (D. Md. Mar. 8, 2022) (quoting *Edusei v. Adventist Healthcare, Inc.*, Case No. 13-cv-0157-DKC, 2014 WL 3345051, at *5 (D. Md. July 7, 2014)). As pled in Harris's complaint, both of these claims fail under Rule 12(b)(6).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to withstand dismissal, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative relief" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Id.* at 679. The liberal construction to which *pro se* litigants are entitled does not mean that this Court can ignore a clear failure to allege facts that set forth a plausible claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "Even *pro se* litigants [must] state their claims in a[n] understandable and efficient manner" because "a district court 'is not obliged to ferret through a [c]omplaint, searching for viable claims.'" *Plumhoff v. Cent. Mortg. Co.*, 286 F. Supp. 3d 699, 702 (D. Md. 2017) (quoting *Stone v. Warfield*, 184 F.R.D. 553, 555 (D. Md. 1999) and *Wynn-Bey v. Talley*, Case No. 12-cv-3121-RWT, 2012 WL 5986967, at *2 (D. Md. Nov. 28, 2012)).

Harris's FMLA interference allegations, to the extent he intended to plead them, fail to state a claim. Interference claims require plaintiffs to "demonstrate that (1) [they are] entitled to an FMLA benefit; (2) [their] employer interfered with the provision of that benefit; and (3) that interference caused harm." *Kolbe v. NSR Marts, Inc.*, Case No. 23-cv-1482-PJM, 2023 WL 5759279, at *2 (D. Md. Sept. 6, 2023) (quoting *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015)). Harris's complaint states that "[o]n July 29, 2022, he provided a work capacity evaluation outlining the duties he could safely perform and submitted this evaluation to management" but that "Ms. Gilliam failed to provide the Plaintiff with a limited duty assignment consistent

7

with his medical restrictions, violating his right to job-protected leave or an accommodation for his serious health condition under the [FMLA]." ECF No. 2 at 5. The FMLA "entitles a qualified employee to be reinstated to the same position he or she held prior to leave, or to an 'equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Kolbe*, 2023 WL 5759279, at *3 (D. Md. Sept. 6, 2023) (quoting 29 U.S.C. § 2614(a)(1)(B)). But unlike the Rehabilitation Act or ADA, the FMLA "confers no right or benefit on an employee to be accommodated by an employer upon his or her reinstatement." *Id.* Thus, even assuming all the complaint's allegations are true, Harris has alleged no FMLA benefit with which the USPS interfered: he had no entitlement to the "limited duty assignment" he sought under the FMLA. *See id.* (dismissing FMLA claims because the alleged interference was related to a request for light-duty work). Thus, he has stated no claim for interference with a benefit under the FMLA.

For an FMLA retaliation claim, a plaintiff must "make a prima facie showing that [1] he engaged in protected activity, [2] that the employer took adverse action against him, and [3] that the adverse action was causally connected to the plaintiff's protected activity." *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304 (4th Cir. 2016). Harris's complaint states that "the USPS failed to provide the requested accommodation and allowed the Manager, DeAdrienne Gilliam, to retaliate against the Plaintiff, keeping him out of work for almost a year." ECF No. 1 at 3. The retaliation that Harris alleges appears to be related to the request for reasonable accommodation under the Rehabilitation Act, *not* retaliation for protected activity under the FMLA. Harris does not state whether this out-of-work period was taken as FMLA leave. Indeed, it appears from the allegation that the period of being out of work for a year (whether under FMLA

8

or not) was the action that Harris alleges constituted retaliation. Harris does not allege that he requested or received medical leave under the FMLA, which means his FMLA retaliation claim would fail under element 1 as there was no FMLA "protected activity." *Vannoy*, 827 F. 3d at 304; *see, e.g.*, *Meidling v. Walgreen Co.*, Case No. 12-cv-2268-T-30, 2014 WL 2700742, at *9 (M.D. Fla. June 13, 2014) (dismissing an FMLA retaliation claim on summary judgment because Plaintiff "admitted . . . that he never made a request for leave under the FMLA"). Because they fail to allege any FMLA protected activity, the FMLA claims will be dismissed without prejudice.

These dismissals leave three types of claims: (1) an IIED claim, (2) a Rehabilitation Act claim for failure to accommodate, and (3) a Rehabilitation Act claim for retaliation.

### C.     Claims against the EEOC

Defendants argue that all of Harris's claims against the EEOC fail because the EEOC has not waived its sovereign immunity regarding its alleged mishandling of Harris's case. ECF No. 9 at 4. Several courts have held, and this Court agrees, that the EEOC is immune from such suits. *See Pugh v. E.E.O.C.*, Case No. 13-cv-2862-DKC, 2014 WL 2964415 (D. Md. June 30, 2014) ("While the . . . Fourth Circuit has not addressed this question, every circuit court to have done so has concluded that 'Congress has not authorized, either expressly or impliedly, a cause of action against the EEOC for the EEOC's alleged negligence or other malfeasance in processing an employment discrimination charge.'") (quoting *Smith v. Casellas,* 119 F.3d 33, 34 (D.C. Cir. 1997)). Rather than dispute this point, Harris has clarified that he intended to only bring an Administrative Procedure Act ("APA") claim against the EEOC related to its delay in processing his claim, not a statutory claim for compensatory damages. ECF No. 13 at 8.

9

He contends that his claim against the EEOC is for "equitable relief, namely, a determination that the agency's unreasonable delay and mishandling of [the] appeal is an action unlawfully withheld under 5 U.S.C. § 706(1)." *Id.*

As explained above, the Court "must 'liberally construe' *pro se* complaints, 'however inartfully plead.'" *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 532 (4th Cir. 2022) (quoting *Erickson*, 551 U.S. at 94). But even under liberal construction, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Ronald Fagan, M.D., P.C. v. U.S. Dep't of Health & Hum. Servs.*, Case No. 23-cv-2095-TJS, 2025 WL 1837402, at *15 (D. Md. July 2, 2025) (quoting *Mylan Lab'ys, Inc. v. Akzo*, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991)). That is exactly what Harris has attempted to do here. Unlike the explicit references to violations of the FMLA, which could potentially give rise to an FMLA claim upon liberal construction, Harris's complaint itself does not mention the APA. The Court will not allow Harris to retroactively include an APA claim via his opposition to the Defendants' motion to dismiss.

Further, Harris likely would not have standing for such a claim anyway. As Harris notes in his opposition, ECF No. 13 at 8, the EEOC's governing regulations state that complainants may bring federal district court lawsuits if the EEOC has not acted within 180 days of an appeal—*i.e.*, past those 180 days, they need not wait for the EEOC before filing a lawsuit. 29 C.F.R. § 1614.407(d). Harris lodged his EEOC appeal and, after waiting past the 180-day period expired, filed the instant lawsuit. The complaint does not clearly allege any injury related to this delay, as Harris has simply asked this Court to adjudicate his claims instead of waiting for the EEOC. Thus, even if the Court were to construe the complaint as stating an APA claim, Harris would not have standing because

the EEOC's alleged delay has not impeded his right to seek relief in this Court; there is no indication that he has suffered any concrete injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'") (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). The Court will grant the Defendants' motion to dismiss all claims against the EEOC.

### D.    Intentional infliction of emotional distress

Defendants also argue that Harris's IIED claims are barred by the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq*. FECA is the workers' compensation statute for federal employees, providing a process for tort claims related to personal injuries suffered in the scope of federal employment. 5 U.S.C. § 8102(a); *see also Diaz v. United States*, Case No. 21-cv-1547-ELH, 2023 WL 4764579, at *5–10 (D. Md. July 26, 2023) (outlining the FECA process). Such claims must be submitted in the first instance to the Department of Labor ("DOL"). 5 U.S.C § 8121. If DOL determines that the injury in question is covered by FECA, the statute dictates that federal courts lack jurisdiction to review DOL's ultimate compensation determination. 5 U.S.C. § 8128(b)(2); *Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991) ("FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determination of FECA coverage.") (quoting *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 780 (1985)). "FECA serves as a 'substitute for the whole of the claim that, but for it, would have arisen under the [Federal Tort Claims Act].'" *Butt v. Williams*, Case No. 20-cv-2318-BAH, 2023 WL 5404073, at *10 (D. Md. Aug. 22, 2023) (quoting *Spinelli v. Goss*, 446 F.3d 159, 161 (D.C. Cir. 2006)); *see* 5 U.S.C.

11

§ 8116(c). Thus, "[i]n essence, federal employees may receive immediate compensation for workplace injuries through FECA, but in exchange, they forfeit the right to sue the government." *Kirby v. United States*, Case No. 24-cv-2424-JMC, 2025 WL 1736285, at *7 (D. Md. June 23, 2025).

If a federal employee plaintiff asserts a tort claim against a federal agency but has not yet exhausted DOL's process for considering FECA claims, "the courts' jurisdiction is limited to considering whether a 'substantial question' of coverage exists under the FECA." *Fuqua v. United States Postal Serv.*, 956 F.3d 961, 964 (7th Cir. 2020); *accord Wallace v. United States*, 669 F.2d 947, 951 (4th Cir. 1982) (analyzing whether there was a "substantial question" as to whether FECA applied to plaintiffs' claims). If a substantial question as to FECA coverage does exist, a court may either stay the claims or dismiss them without prejudice, directing the plaintiff to DOL's administrative processes. *See, e.g.*, *Kellahan v. United States*, Case No. 13-cv-3534-RMG, 2014 WL 13139440, at *2 (D.S.C. Mar. 6, 2014) ("Where a substantial question as to coverage under FECA exists, a court may stay an FTCA action pending a final determination by the Secretary of Labor regarding FECA coverage."); *Richards v. C.I.A.*, 837 F. Supp. 2d 574, 580 (E.D. Va. 2011) (dismissing without prejudice to allow plaintiff "to pursue any administrative remedy he may have under FECA").

Here, Harris has included a claim for IIED, a tort. He alleges that his supervisors' conduct caused him "severe mental anguish and emotional trauma," as well as financial difficulties. ECF No. 2 at 5–6. It appears that Harris filed a FECA claim with DOL to receive compensation for his back injuries. ECF No. 13-5. But at least as pled, that claim did not include his mental and emotional injuries related to his supervisors' conduct. *See* ECF No. 13-5 at 2–4 (discussing medical records related only to the back injury);

12

ECF No. 2 at 7 (outlining Plaintiff's emotional injuries). Other federal courts have found that DOL has FECA jurisdiction over intentional torts, including IIED, and emotional injuries related to the behavior of co-workers or supervisors. *See, e.g.*, *Batuyong v. Sec'y of Dep't of Def.*, Case No. 1:07-cv-944, 2008 WL 323154, at *9 (N.D. Ohio Feb. 4, 2008), *aff'd sub nom. Batuyong v. Gates*, 337 F. App'x 451 (6th Cir. 2009) ("Intentional infliction of emotional distress claims raised by federal employees . . . fall within the purview of FECA and therefore are preempted by the statute. . . . The fact that the Plaintiff's emotional distress claim arises in an employment discrimination context does not render the claim beyond FECA's coverage."); *Lewis-Giles v. Green*, Case No. 08-cv-648, 2009 WL 10680289, *7 (M.D.N.C. Oct. 22, 2009) ("FECA applies to all workplace injury claims, regardless of whether the injury was sustained through an act of negligence or an intentional tort"); *Fuqua*, 956 F.3d at 965 (stating that FECA can cover "job-related mental distress"). There is thus at least a "substantial question" regarding whether FECA applies, which divests this Court of jurisdiction. The Court will dismiss Harris's IIED claims without prejudice to re-raise the claims if DOL finds it does not have FECA jurisdiction.

This dismissal also includes the IIED claim against Gilliam in her personal capacity. When a plaintiff brings state tort claims against federal employees in their personal capacities for conduct undertaken within the scope of employment, the claims are subsumed by the FTCA and the United States is substituted as the proper defendant (upon a certification by the government that the employee was acting within the scope of employment). 28 U.S.C. § 2679(b)(1), (d); *see also Lewis-Giles*, 2009 WL 10680289, at *6. Thus, if Gilliam was acting within the scope of her employment, Harris's state tort claim against her would be properly brought via the FTCA and against the United States.

But, as explained above, "FECA serves as a 'substitute for the whole of the claim that, but for it, would have arisen under the [FTCA]'" when the plaintiff is a federal employee and the injuries were related to their employment. *Butt*, 2023 WL 5404073 at *10 (quoting *Spinelli*, 446 F.3d at 161 (D.C. Cir. 2006)). There is thus at least a substantial question whether the personal-capacity claim is covered by FECA: Gilliam's alleged tortious conduct involved making supervisory decisions about Harris's job position and duties, and thus appears to have been within the scope of her employment. *See, e.g.*, *Pitt v. Matola*, 890 F. Supp. 89, 94 (N.D.N.Y. 1995) (dismissing a federal employee's personal-capacity tort claims against her co-worker because "FECA provides the exclusive remedy for a federal employee injured in the scope of [their] employment even when the actor who allegedly caused the accident is also a federal government employee"). The personal-capacity tort claim against Gilliam is thus also dismissed without prejudice.

### E.     The retaliation claim

The Defendants argue next that Harris has failed to exhaust administrative remedies related to his retaliation claim under the Rehabilitation Act. As discussed above, *see supra* § II.B, though the complaint does not specifically plead a standalone retaliation claim, Harris does allege that his supervisor Gilliam "retaliate[d] against" him by keeping him out of work after he had requested a reasonable accommodation. ECF No. 2 at 3. The Defendants contend that Harris failed to include this claim in his internal USPS EEO complaint, and that the failure to exhaust "deprives this Court of subject matter jurisdiction over the retaliation claim." ECF No. 9 at 6.

"Rehabilitation Act claims 'must comply with the same administrative procedures that govern federal employee Title VII claims,'" including exhaustion. *Stewart v. Iancu*,

14

912 F.3d 693, 699 (4th Cir. 2019) (quoting *Wilkinson v. Rumsfeld,* 100 F. App'x 155, 157 (4th Cir. 2004)). Thus, federal employees who sue under the Rehabilitation Act "must exhaust their available administrative remedies before pursuing an action in federal court." *Melendez v. Sebelius*, 611 F. App'x 762, 763 (4th Cir. 2015). "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Otherwise, the claims are barred. *Id.*

Though the Defendants frame this aspect of their motion to dismiss (indeed, the entire motion) as based on a lack of subject matter jurisdiction, the more applicable ground for dismissal would be for failure to state a claim. "Although exhaustion [of claims like Harris's] is imperative, it is not jurisdictional." *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022); *see also Morton v. DeJoy*, Case No. 23-cv-618-RCY, 2025 WL 2782959, at *6 (E.D. Va. Sept. 30, 2025) ("The requirements of administrative exhaustion are mandatory, although not jurisdictional, so they are matters to take up via Rule 12(b)(6).") (quoting *Figueroa-Ibarry v. Rennick*, Case No. 20-cv-23, 2021 WL 954843, at *4 (E.D. Va. Mar. 12, 2021)); *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 (2019) ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."). Defendants cite *Jones v. Calvert Group, Ltd.*, 551 F. 3d 297, 300 (4th Cir. 2009), for the proposition that the exhaustion requirement is jurisdictional. But that holding was abrogated by *Fort Bend County*, 587 U.S. 541, 547, which names *Jones* specifically. To the extent Defendants have moved to dismiss an unexhausted retaliation claim for lack of subject matter jurisdiction, that motion is denied.

15

In any event, the Court will not dismiss on Rule 12(b)(6) grounds either. Defendants argue that Harris's investigative affidavit with the USPS's EEO lists a 2018 EEO complaint in answer to a question about retaliation. ECF No. 9-3 at 4. This, Defendants contend, precludes Harris from bringing a retaliation claim stemming from the EEO complaint he filed related to the instant case. ECF No. 9-1 at 7. But Harris's affidavit also notes, "I am not sure if management officials have became [sic] aware of me filing the EEO complaint or not" in answer to another question about retaliation related to the instant EEO complaint. ECF No. 9-3 at 4. Further down in the affidavit, Harris states that "[i]t is my strong belief that the refusal to accommodate me is a retaliatory act . . . because of my injury/disability." ECF 9-3 at 10. Harris's affidavit also mentions Gilliam throughout. *Id*. To meet the requirement for exhaustion, the administrative complaint and the lawsuit "must, at a minimum, describe the same conduct and implicate the same individuals." *Chacko v. Patuxent Inst*., 429 F. 3d 505, 509 (4th Cir. 2005) (quoting *Kersting v. Wal-Mart, Inc*., 250 F.3d 1109, 1118 (7th Cir. 2001)). Harris's complaint has met that standard, so his retaliation claim under the Rehabilitation Act is not barred on exhaustion grounds.

### F.   Claims against the individual defendants

Finally, Defendants move to dismiss all claims against the individual defendants. Harris sued Gilliam, in both her personal and official capacities, and Dejoy, Raymond, and Burrows in their official capacities only. ECF No. 2 at 2–3. Following the motion to dismiss, Harris filed a motion voluntarily dismissing his claims against DeJoy and Burrows, ECF No. 14, which the Court will grant. Thus, the only remaining individual defendants are Gilliam (personal and official capacity) and Raymond (official capacity

16

only). As the Court has already dismissed the IIED claims, *supra* § II.D, only the Rehabilitation Act claims remain.

First, any claims against Gilliam in her personal capacity under the Rehabilitation Act will be dismissed. "[S]upervisors are not liable in their individual capacities for Title VII violations" due to the text and structure of Title VII's definition of "employer." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Applying the same rationale to a similar statute, "[t]he judges of this Court have repeatedly said that 'there is no individual liability for supervisors under the Rehabilitation Act.'" *Jennings v. Frostburg State Univ.*, Case No. 21-cv-656-ELH, 2021 WL 5989211 (D. Md. Dec. 16, 2021) (quoting *Stiner v. Bd. of Educ. of Cecil Cnty., Md.*, 2014 WL 69111, at *3 (D. Md. Jan. 7, 2014) and collecting cases). Harris's Rehabilitation Act claims against Gilliam in her personal capacity will be dismissed.

The same logic does not necessarily apply to the claims against Gilliam and Raymond in their *official* capacities, however. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Courts thus may dismiss claims brought against both official-capacity individuals and their employing agencies as duplicative. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that a § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the [School] Board and thus should be dismissed as duplicative."). "Dismissal, however, is not required." *Duncan v. Prince George's Cnty.*, Case No. 18-cv-1378-PX, 2018 WL 6621503, at *3 (D. Md. Dec. 18, 2018). Citing an interest in "public accountability," judges of this Court often retain official-capacity claims, even if

17

duplicative, when plaintiffs have alleged that the named individual defendants specifically have violated their rights. *Id.*; *see also Jennings*, 2021 WL 5989211 at *10 (maintaining duplicative Rehabilitation Act claims against an individual defendant in his official capacity).

Applying these standards, the Court will dismiss the statutory claims against Raymond but not against Gilliam. Harris's complaint primarily focuses on specific actions Gilliam took that allegedly violated his rights (allegations that the Court must accept as true at this stage). Particularly because Gilliam is represented by the same attorneys who represent the USPS, "no prejudice will accrue" from maintaining the duplicative claim. *Jennings*, 2021 WL 5989211, at *10. The Court thus declines to dismiss the claims against Gilliam in her official capacity. The complaint only mentions Raymond, in contrast, in the context of the "policies and procedures" of the larger USPS division he manages. ECF No. 2 at 6. Because the claims against Raymond are duplicative of the claim against the USPS and no facts were alleged specific to his individual actions, the Court will dismiss the statutory claims against Raymond in his official capacity.

### III. CONCLUSION AND ORDER

For the reasons stated above, the Court hereby ORDERS as follows:

1. The motion to dismiss (ECF No. 9) is GRANTED IN PART and DENIED IN PART;
2. The motion to voluntarily withdraw the claims against DeJoy and Burrows (ECF No. 14) is GRANTED, and the Clerk is directed to TERMINATE DeJoy and Burrows as defendants;
3. Plaintiff's ADA claims, to the extent he intended to plead them, are DISMISSED;

4. Plaintiff's FMLA claims, to the extent he intended to plead them, are DISMISSED WITHOUT PREJUDICE;

5. The claims against the EEOC are DISMISSED and the Clerk is directed to TERMINATE the EEOC as a Defendant;

6. The IIED claims against all Defendants are DISMISSED WITHOUT PREJUDICE;

7. The motion to dismiss the Rehabilitation Act retaliation claims for failure to exhaust is DENIED;

8. The claims against Raymond in his official capacity and Gilliam in her personal capacity are DISMISSED, and the Clerk is directed to TERMINATE Raymond as a party;

9. The motion to dismiss the Rehabilitation Act claims against Gilliam in her official capacity is DENIED.

What remains are two claims against two defendants: Rehabilitation Act claims for failure-to-accommodate and for retaliation against the USPS and Gilliam in her official capacity. Defendants are reminded that they must submit an answer to the complaint within 14 days of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

Date: November 4, 2025                              ____/s/____
                                                    Adam B. Abelson
                                                    United States District Judge